Commonwealth ex rel. *v.* Penn General Casualty Company, Appellant.

Argued April 23, 1934. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Joseph W. Henderson,* with him *George M. Brodhead, Jr., Paul G. Smith* and *Thomas F. Mount,* of *Rawle & Henderson,* for appellant.—The state court and federal court have concurrent jurisdiction over the liquidation and winding up of insurance companies: Turner's Est., 277 Pa. 110; O'Neil v. Welch, 245 Fed. 261; Mitchell v. Maurer, 69 Fed. (2d) 233; Burnrite Coal Co. v. Riggs, 274 U. S. 208.

The federal court first acquired jurisdiction of liquidation and winding up of appellant and is therefore entitled to retain it to the exclusion of the state court: Harkin v. Brundage, 276 U. S. 36; O'Neil v. Welch, 245 Fed. 261.

*Harold D. Saylor,* Deputy Attorney General, with him *Wm. A. Schnader,* Attorney General, for appellee.—The Commonwealth has provided a system for the incorporation, supervision and liquidation of insurance companies: Com. v. Surety Co., 306 Pa. 19.

A federal court does not have jurisdiction to appoint receivers to liquidate quasi public corporations of sovereignties other than the United States: Lyon v. McKeefrey, 171 Fed. 384; Mitchell v. Lay, 48 Fed. (2d) 79; Amos v. Trust Co., 54 Fed. (2d) 286; Lee v. Edmunds, 66 Fed. 122.

Even if it had jurisdiction, a federal court should not exercise it in derogation of a state's right to control, regulate and liquidate its quasi public institutions: Bank of Bay Biscayne v. Hankins, 42 Fed. 209; O'Neil v. Welch, 245 Fed. 261; Lyon v. McKeefrey, 171 Fed. 384.

Opinion by Mr. Justice Schaffer, June 30, 1934:

This case involves a conflict of jurisdictions between the state and federal courts in the winding up of the affairs of an insolvent insurance company. The appeal is by the company from the decree of the Court of Common Pleas of Dauphin County making absolute a rule to show cause why the appellant should not be dissolved, its charter vacated and its affairs liquidated by the insurance commissioner, who was directed by the decree forthwith to take possession of the property of the company. The position of appellant is that as a proceeding had been commenced against it in the federal court prior to the action in the state tribunal, the latter's jurisdiction was ousted.

Appellant is a Pennsylvania corporation organized under the Insurance Company Law of May 17, 1921, P. L. 682, 40 P. S., section 341. It conducted its business under the supervision and regulation of the insurance commissioner. On September 14, 1933, pursuant to a citation by the commissioner, appellant's officers and directors attended a hearing before him, at which the president of the company was ordered to return to it assets he had improperly removed and illegally invested to the serious impairment of its financial stability. On October 14, 1933, a hearing was held before the attorney general, at which it was established that the further transaction of business by the company would be hazardous to its policyholders, its creditors and the public. Thereafter negotiations were conducted by the commissioner with the stockholders of the company in an effort to rehabilitate it and to place it in position to resume business. Pending these negotiations, on November 17, 1933, a resident of West Virginia, claiming to hold four shares of appellant's capital stock, filed in the United States District Court for the Eastern District of Pennsylvania a bill in equity for the appointment of receivers for the company and its liquidation. On December 8, 1933, while that bill was pending, the attorney general of

Pennsylvania filed in the court below his petition averring appellant to be in such condition that its further transaction of business would be detrimental and hazardous to its policyholders, creditors and the public. The same day the court below issued an order enjoining appellant from transacting business and disposing of its property. On December 14, 1933, appellant filed an answer in the district court proceedings denying that the complainant was a resident of West Virginia and that he was the registered owner of four shares of its stock. On the same date the court below issued a further order restraining appellant from surrendering possession of any of its books or assets to any person other than the insurance commissioner. The following day, December 15, 1933, the federal court, on the application of complainant's counsel, issued its restraining order of substantially similar import. On December 18, 1933, appellant filed a denying answer to the petition of the attorney general and set up the pendency of the bill against it in the federal court. Thereafter a hearing was held in the court below at which the attorney general presented testimony sustaining the allegations of his petition. Appellant offered no defense. Subsequently the court below entered the decree from which this appeal was taken.

The position of appellant is that both courts have concurrent jurisdiction over it and that as the jurisdiction of the federal court first attached, its jurisdiction is now exclusive. It furthermore points out that the Act of May 17, 1921, P. L. 789, 40 P. S., section 201, does not in terms confer exclusive jurisdiction on the state court. We think the latter fact of little or no consequence for the reason that, if the federal court has jurisdiction, its cognizance of the actions could not be ousted by a state statute declaring that its courts have exclusive jurisdiction.

Pennsylvania has provided a most complete system for the regulation and liquidation of insolvent insurance

companies and the winding up of their affairs in "The Insurance Department Act of 1921," approved May 17, 1921, P. L. 789, 40 P. S., section 1, and "The Insurance Company Law of 1921," approved May 17, 1921, P. L. 682, 40 P. S., section 341. Speaking of the former act, we said in Com. v. Equitable Casualty & Surety Co., 306 Pa. 19, that it is a comprehensive statute regulating the business of insurance in the Commonwealth. Section 201 (40 P. S., section 41) establishes the insurance department and charges it with the execution of the laws of the Commonwealth in relation to insurance. Section 213 (40 P. S., section 51) directs the commissioner to require every domestic insurance company to keep its books and records in such manner that his representatives may readily verify its annual statements and ascertain whether it has complied with the provisions of the law. The statute requires him to examine each company at least once in three years to ascertain its financial condition, its ability to fulfill its obligations, and its compliance with the provisions of law. Section 502 (40 P. S., section 202) provides that whenever any domestic insurance company is insolvent, or has refused to submit its books, etc., to the inspection of the commissioner, or has neglected or refused to observe an order made by him to make good a deficiency in its capital or transferred its property or merged with another company without the commissioner's approval, or if found after examination to be in such condition that its further transaction of business will be hazardous, or has violated its charter or any law of the Commonwealth, or whenever any officer has refused to be examined under oath touching its affairs, the commissioner shall communicate the facts to the attorney general, who shall, after hearing, apply to the Court of Common Pleas of Dauphin County, or the court of the county in which the principal office is located, for an order directing such company to show cause why its business should not be closed and the commissioner should not take possession of its property and

conduct its business and for other relief. Section 507 (40 P. S., section 207) provides that if any receiver of an insurance company is appointed on motion of the attorney general at the instance of the insurance commissioner, such receiver shall supersede any receiver previously appointed by the decree of any court of this Commonwealth.

An examination of all the insurance statutes shows that they provide a complete system for the incorporation, management, supervision and liquidation of insurance companies created under the laws of this Commonwealth. In view of this situation and having due regard for the comity which should exist between the federal and state courts, it would seem that the former should not take jurisdiction to liquidate and wind up domestic insurance companies when the complete machinery to do so has been set up by the State. At the very time the federal court asserted its jurisdiction, the insurance commissioner was exercising his full prerogatives over the appellant.

There is and ought to be a wide difference between the jurisdiction of the federal courts over the generality of corporations and over those of a quasi public character where the State creating them, because of their public nature, has provided a complete system for their liquidation by its public officers. If insurance companies are to be liquidated through the federal courts, so may state banks and building and loan associations. Such corporations have been differentiated from others in federal legislation. They are not subject to the Bankruptcy Laws: Act of February 11, 1932, clause 38, 47 Stat. 47, 11 U. S. C. A., section 22.

The only grant of power to the United States which can be invoked to vest jurisdiction in its courts for the liquidation of such corporations as the appellant is article III, section 2, of the Constitution, which provides: "The judicial power shall extend......to controversies ......between citizens of different states." This lan-

guage is carried into the Judicial Code (R. S., sections 563, 629; 28 U. S. C. A., section 41). Both Constitution and Code require that there must be a "controversy." Under the system of supervisory regulation over insurance companies established by the laws of Pennsylvania there cannot be a controversy in the state courts between a stockholder and an insurance company regarding the liquidation thereof. The power to liquidate insurance companies rests solely in the insurance commissioner. A citizen of Pennsylvania cannot, by bringing a bill in equity in a Pennsylvania court against a Pennsylvania insurance company, prevent the insurance commissioner from liquidating. If the district courts of the United States have jurisdiction in cases such as the pending one, a citizen of another state would have rights superior to those of a citizen of Pennsylvania.

As we read the decisions of the federal appellate courts, jurisdiction in situations similar to the present one has been disclaimed by those tribunals. In Port Newark Nat. Bank v. Waldron, 56 Fed. (2d) 296, a district court appointed a receiver to take charge of the affairs of a national bank. The comptroller of the currency thereafter appointed a receiver under the provisions of the United States statutes. The comptroller then appealed from the decree appointing the first receiver. In the course of his opinion reversing the district court, Judge BUFFINGTON of the Circuit Court of Appeals said, page 299: ".......in the present case we regard the comptroller at the time this bill was filed as having complete dominion over, and, by his bank examiner, full legal control of, the then and future operations of the bank, and that such situation might ultimately require the appointment of a receiver. Consequently, the court below, when the bill was filed, acquired no jurisdiction to shear the comptroller of the statutory power to take the further step of appointing a receiver in case insolvency existed and the attempted sale fell through."

In Lyon v. McKeefrey, 171 Fed. 384, the Circuit Court
of Appeals for the Third Circuit had before it the ques-
tion of the jurisdiction of a district court to appoint
receivers and liquidate a Pennsylvania State bank. At
page 393, Judge GRAY said: "But the court below has
clearly exhausted its jurisdiction, so far as the purposes
of the original bill are concerned. That bill did not con-
template a dissolution of the corporation and a winding
up of its business, indeed, the court was without juris-
diction for that purpose." In that case the bill had been
amended after it was originally filed so as to include a
prayer for a winding up of the bank and the distribution
of its assets. In that connection, the learned judge said,
page 393: "But, apart from the propriety of allowing
the amendment (a matter largely within the discretion
of the court) it is clear that the court could not grant
the prayer of the bill as amended." Referring to the
nature of the corporation involved and the consequent
relationship of the State to it, Judge GRAY said: "The
defendant corporation was a creature of the laws of
Pennsylvania, and by those laws the rules governing its
existence were prescribed. The measure of control to
be exercised over its own corporations was determinable
by the law and policy of the state to which they owed
their being. By the legislation here in question, the
State of Pennsylvania has seen fit to subject such cor-
porations to supervision and administrative control and
has ordained the proceedings, partly administrative and
partly judicial, by which the life of such corporations
may be determined and their affairs wound up and liqui-
dated. The judicial proceeding is not one that may be
instituted by private parties, but by the attorney gen-
eral of the State, acting on behalf of the Commonwealth
and in the interest of the public. Such a proceeding is
not one of which a United States court can have con-
current jurisdiction. It does not involve a controversy
between private parties, whether citizens of the same
state or of different states."

In Mitchell v. Lay, 48 Fed. (2d) 79, Judge WILBUR of the Ninth Circuit reversed the district court and directed a receiver already appointed to turn over the assets of an insurance company to the state insurance commissioner as soon as the commissioner "has secured an appointment as receiver thereof in the action now pending in the state court." In Lee v. Edmunds, 66 Fed. (2d) 122, 125, the Circuit Court of Appeals of the Fifth Circuit said: "The decisions of this court have agreed with those of the Supreme Court of Florida that only in a clear case of mismanagement will a court of equity take the assets from the statutory administration. ..... Yet a court of equity in case of necessity may appoint a receiver for special property in the liquidator's hands, but only on a showing of fraud, corruption, or maladministration or other illegal action of the liquidator." In Bank of Bay Biscayne v. Hankins, 42 Fed. (2d) 209, the district court appointed a receiver to control the assets of an insolvent state bank in place of the state comptroller of Florida acting under statutory authority. The Circuit Court of Appeals, in reversing the district court's action and remanding the case with directions to dismiss the bill, said at page 210: "Regardless of the terms used, it is apparent that the order in effect appoints a receiver to control the assets of the failed bank, and enjoins the comptroller from carrying on the liquidation of the institution under the provisions of the laws of Florida. A bank organized under the laws of a state is a quasi public institution, and, whenever the laws of the state provide for supervision and control of the affairs of the bank by an authorized official, and also for the ultimate liquidation and distribution of its assets under his direction, in the event of its insolvency, it is a matter of grave consequence for any court to interfere. ...... The laws of Florida provide an orderly method of liquidating the affairs of an insolvent state bank, in substantially the same manner that federal statutes provide for the liquidation of an insolvent national bank. ...... It

is usually a matter of discretion to issue an injunction and appoint a receiver, but the exercise of jurisdiction and the entering of the order appealed from in this case appear to us to be unwarranted."

In O'Neil v. Welch, 245 Fed. 261, the Circuit Court of Appeals of the Third Circuit had for consideration Pennsylvania's right to administer the affairs of its insurance companies through its insurance commissioner. The commissioner through the attorney general had proceeded in the state court under the state statute against a Pennsylvania insurance company. Thereafter, a non-resident stockholder filed a bill in the district court, alleging insolvency and asking for the appointment of a receiver. The defendant company filed a consent answer. The day before the proceedings in the state court came to a hearing upon a rule theretofore granted, the district court appointed a receiver. The attorney general thereupon filed a petition in that court to vacate the appointment. The district court dismissed the petition and on appeal the Circuit Court of Appeals reversed. Judge WOOLLEY, in writing the opinion, said at page 267: "The State engaged in this undertaking primarily for the protection of the public. Being for the public, its action is a governmental function. When in its exercise it becomes necessary to protect the public from insolvent or improperly conducted insurance companies, the State pursues a remedy prescribed by the same law that conferred the corporation's rights and defined the state's duties. Given briefly, the insurance commissioner, acting through the attorney general, filed in a state court a suggestion of the corporation's insolvency or unlawful conduct. In this way the State acts and in this way the State begins suit. Upon the state's suggestion the court starts a judicial inquiry by directing to the insurance company a rule to show cause why the insurance commissioner should not take possession of its property, and at the same time (that is, at the very beginning of the suit) the court, if it wishes, lays its hand

upon the company's property, and by a restraining order holds it within its control pending the inquiry. The jurisdiction of the state court thus invoked is a special jurisdiction conferred by statute as a part of the state's policy of insurance regulation and control. It is not conferred for the protection of corporations' policyholders and creditors alone, but for the protection of the public as well. This clearly appears by the terms of the act; it again appears in the court's decree. In prosecuting an insurance company the State is acting for the public, and the public is in turn interested in the proceeding; though not nominally present as a party, it is nevertheless present in the person of the attorney general."

In Shapiro v. Wilgus, 287 U. S. 348, where the receivership was obtained by a filing of a consent decree, the Supreme Court of the United States gave warning against the abuse of the practice of appointing federal receivers upon a consent answer, where the application is predicated on diversity of citizenship. The court said, page 356: "We have given warning more than once, however, that the remedy in such circumstances is not to be granted loosely, but is to be watched with jealous eyes. ...... Never is such a remedy available when it is a mere weapon of coercion, a means for the frustration of the public policy of the state or the locality." The filing of the bill in this case by the alleged stockholder of the company in the federal court was an obvious effort to frustrate the public policy of Pennsylvania.

Believing as we do that the federal court was without jurisdiction and that the action of the court below was proper, we affirm the decree at appellant's cost.