## Commonwealth ex rel. v. Keystone Indemnity Exchange

*William A. Schnader, Harold D. Saylor, Charles J. Margiotti, Stevens & Lee, Weiss & Rhoads, Maurice Stern* and *Lewis J. Finestone*, for Commonwealth.

*William Hamlin Neely, Samuel Handler, Sanford D. Beecher, Duane, Morris & Heckscher, Kirchner, Mitchell & White, Blanc & Steinberg, Howard M. Kuehner, Due & Nickerson,* of Baltimore, Md., and *Turney, Stephens, Verhunee, Mihelich & Stephens,* of Cleveland, Ohio, for defendant and policyholders.

WICKERSHAM, additional law judge, April 13, 1938.— This case comes before us on exceptions to the first report,

audit, and petition filed by the statutory liquidator of the Keystone Indemnity Exchange, defendant.

## History of the case

The Keystone Indemnity Exchange began operation September 10, 1919, under the Act of June 27, 1913, P. L. 634, which authorized and regulated indemnity reciprocal or inter-insurance contracts. With the adoption of The Insurance Company Law of May 17, 1921, P. L. 682, the said exchange, defendant, operated under its terms since the latter act repealed the said Act of 1913.

The Act of April 9, 1929, P. L. 464, sec. 1, 40 PS §964, amended article X, sec. 1004 (d) of The Insurance Company Law of 1921, supra, which (Act of 1929) provided that the attorney-in-fact should file with the Insurance Commissioner "(d) A copy of the form of power of attorney, or other authority of such attorney, under which such insurance is to be effected or exchanged [by adding thereto] and which shall provide that the liability of the subscribers, exchanging contracts of indemnity, shall make provision for contingent liability, equal to not less than one additional annual premium or deposit charged."

From April 9, 1929, until September 4, 1930, the powers of attorney used by defendant and its attorney-in-fact, Keystone Indemnity Company, did not contain the provision for contingent liability required by said Act of 1929. The policies of insurance issued to the subscribers to the exchange by the attorney-in-fact, Keystone Indemnity Company, on the contrary, contained in paragraph N, inter alia, the following sentence:

"Upon payment of the premium herein provided for the subscriber shall not be liable for nor required to make any other payment under this contract."

After September 4, 1930, some of the policies of insurance continued to be written on the nonassessable form but some others contained the following statement in paragraph N:

"In the event that the premium herein provided for, together with the premium deposits of other subscribers, and the reserves and surplus funds maintained by the Keystone Indemnity Exchange shall be insufficient to pay the losses incurred, assured shall be contingently liable for an additional amount, not to exceed, however, the annual premium or deposit charged herein. It is understood and agreed, however, by and between the subscriber and Keystone Indemnity Company, attorney-in-fact, that the said Keystone Indemnity Company shall procure adequate insurance and reinsurance in companies of acceptable standing providing indemnity against any such contingent premium liability on the part of the assured as herein provided."

On May 18, 1933, on complaint of the Attorney General, this court made an order and decree dissolving this defendant and directed the Insurance Commissioner of this Commonwealth to take possession and liquidate its affairs under The Insurance Department Act of May 17, 1921, P. L. 789.

On December 20, 1937, the Honorable Owen B. Hunt, Insurance Commissioner of this Commonwealth, as statutory liquidator of defendant, filed his first report, audit, and petition covering the period from May 18, 1933, to September 1, 1937. In this report he admitted certain claims filed against defendant aggregating $291,455.55 and made recommendations that the policyholders of said defendant be assessed to pay these claims. Two separate forms of assessment were suggested by the commissioner, to wit:

1. That persons holding policies issued between September 4, 1930, and May 18, 1933, pay an assessment equal to 50 percent of their annual deposit premium; or,

2. That persons holding policies issued between April 9, 1929, and May 18, 1933, pay an assessment equal to 33⅓ percent of their annual deposit premiums.

To the said report, audit, and petition certain policyholders have filed 75 exceptions; however, by agreement

of counsel, the only question before us at this time is the liability of the subscribers for a contingent sum to pay the losses and other obligations unpaid at dissolution of defendant.

We think the question involved is: Can an assessment be levied against subscribers to an insolvent reciprocal or inter-insurance exchange, after the exchange has been dissolved by decree of court and The Insurance Department Act, supra, makes no provision for the levying of an assessment?

### Discussion

Reciprocal insurance has been in existence for many years but has seldom been passed upon by the courts of Pennsylvania. In the recent case of Long v. Sakleson et al., etc., 328 Pa. 261, Mr. Chief Justice Kephart discusses at length the nature of reciprocal insurance, but says nothing of the power of the court to levy an assessment after a reciprocal exchange is dissolved. From time to time the courts of other jurisdictions have had occasion to discuss reciprocal insurance: In re Minnesota Insurance Underwriters, 36 F.(2d) 371; Wysong et al. v. Automobile Underwriters, Inc., 204 Ind. 493, 184 N. E. 783.

In Pennsylvania the first recognition of reciprocal insurance was in the Act of 1913, supra, and it was under this act that defendant began operation. But this act was repealed by The Insurance Company Law of 1921, which amended, revised, and consolidated the laws relating to insurance companies, Lloyds associations, reciprocal and inter - insurance exchanges, etc. Sections 1001 - 1011 of said Act of 1921 relate specifically to reciprocal and inter-insurance exchanges. Article X of said act with its amendments is the only act now in force relating to this type of insurance. It can be seen from said act and the prior Act of 1913 that the legislature considered reciprocal or inter-insurance exchanges to be separate and distinct from all other types of insurance. The amend-

ment to said Act of 1921, article X, sec. 1004 (*d*), by the Act of 1929, supra, is the only amending act which has any bearing on the case at bar, and is as follows:

"(*d*) A copy of the form of power of attorney, or other authority of such attorney, under which such insurance is to be effected or exchanged, and which shall provide that the liability of the subscribers, exchanging contracts of indemnity, shall make provision for contingent liability, equal to not less than one additional annual premium or deposit charged."

The Insurance Company Law of 1921, art. X, in general reënacted the provisions of the original Act of 1913.

In the petition of the Insurance Commissioner, this court is asked to make a decree levying an assessment upon the subscribers of Keystone Indemnity Exchange holding policy contracts issued from September 4, 1930, to May 18, 1933, or, in the alternative, holding policy contracts issued from April 9, 1929, to May 18, 1933. It is contended by certain of the parties to these proceedings that subscribers to Keystone Indemnity Exchange are not subject to assessment.

In the Act of 1913, which was the first legislative enactment in Pennsylvania regulating reciprocal or inter-insurance contracts, no provision was made for an assessment of subscribers. Neither is there any such provision in The Insurance Company Law of 1921, which in article X reënacted said Act of 1913. It was not until the passage of the amendment to article X, sec. 1004 (*d*), by the Act of 1929 that any mention was made concerning the contingent liability of the subscribers.

On the same day that The Insurance Company Law was adopted, The Insurance Department Act of 1921 was adopted providing for an Insurance Department and setting up laws relating to the duties of the Insurance Department over the affairs of insurance companies, including, inter alia, reciprocal and inter-insurance exchanges. Article V of this act provides for the suspension of business and involuntary dissolution. It sets up a com-

prehensive plan for the suspension of business and the taking over of the company and dissolution of the same and liquidation by the Insurance Commissioner. We quote from section 510:

"When the Insurance Commissioner has, in pursuance of the provisions of this act, liquidated any company, association, exchange, society, or order, he shall, as soon as the assets thereof have been converted into money, file a complete account in the court of common pleas of the county in which the proceedings were instituted, showing: (a) All deposits and assets of said company, association, exchange, society, or order; (b) all the moneys paid to him on account of the same; (c) all exceptions filed to any claims or accounts; (d) all payments made or contracted for by him; and (e) the scheme of distribution to creditors, policyholders, or stockholders. Such account shall be proceeded with and passed upon as other accounts are passed upon in said court. If exceptions to the account have been filed with the Insurance Commissioner, they shall have the same force and effect as if filed in the court. Upon confirmation of said account, if no exceptions be filed thereto, or upon the final disposition of exceptions thereto by the court, the Insurance Commissioner shall distribute the money as shown by said account or as decreed by the court, and, upon the complete distribution of all assets of said company, association, exchange, society, or order, he shall report the fact of said distribution to the court."

It is to be noted that no provision is made in this act for an assessment of the policyholders of a reciprocal or inter-insurance exchange. The only authority given to the Insurance Commissioner is to file an account showing all deposits and assets of moneys paid to him on account of the same, all exceptions filed to any claim or accounts, all payments made or contracted for by him, and the scheme of distribution to creditors, policyholders, or stockholders. Nothing whatever is said about the court at this time making any decree for an assessment against subscribers of

an indemnity exchange. The reason for this is obvious. In 1921 when this act was adopted by the legislature the only type of insurance associations which were subject to assessment were mutual insurance companies. Section 105 of The Insurance Department Act provides as follows:

"*Effect of Act.*—The provisions of this act, so far as they are the same as those of existing laws, shall be construed as a continuation of such laws and not as new enactments. The repeal by this act of any provision of law shall not revive any law heretofore repealed or superseded, nor shall this act affect any act done, liability incurred, or any right accrued and established, or any suit or prosecution, civil or criminal, pending or to be instituted to enforce any right or penalty or punish any offense under the authority of the repealed laws. Any person who, at the time when said repeal takes effect, holds office under any of the laws repealed shall continue to hold such office according to the tenure thereof."

Construing this act, the Supreme Court, in the case of Commonwealth ex rel. v. Penn General Casualty Co., 316 Pa. 1, at page 4, said:

"Pennsylvania has provided a most complete system for the regulation and liquidation of insolvent insurance companies and the winding up of their affairs in 'The Insurance Department Act of 1921,' approved May 17, 1921, P. L. 789, 40 P. S., section 1, and 'The Insurance Company Law of 1921,' approved May 17, 1921, P. L. 682, 40 P. S., section 341." Again at page 6 the court continued:

"An examination of all the insurance statutes shows that they provide a complete system for the incorporation, management, supervision and liquidation of insurance companies created under the laws of this Commonwealth. In view of this situation and having due regard for the comity which should exist between the federal and state courts, it would seem that the former should not take jurisdiction to liquidate and wind up domestic in-

surance companies when the complete machinery to do so has been set up by the State."

In Commonwealth ex rel. v. Equitable Casualty & Surety Co., 306 Pa. 19, at page 23, we find:

"The act of May 17, 1921, P. L. 789, is a comprehensive statute regulating the business of insurance in the Commonwealth. It includes not only domestic insurance companies, but the business of any insurance company 'whether incorporated under the laws of this Commonwealth, or any state, territory or district, or under the laws of any foreign country.' "

The Act of March 21, 1806, 4 Sm. L. 326, sec. 13, 46 PS §156, provides as follows:

"That in all cases where a remedy is provided or duty enjoined, or any thing directed to be done by any act or acts of Assembly of this commonwealth, the directions of the said acts, shall be strictly pursued, and no penalty shall be inflicted or any thing done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect."

This Act of 1806 has been numerously quoted and referred to in the decisions of our courts: Ermine v. Frankel et al., 322 Pa. 70, 72; Bowman v. Gum, Inc., et al., 321 Pa. 516; Taylor v. Moore, 303 Pa. 469, 473.

We think it is clear that The Insurance Department Act set up a complete method of procedure for the dissolution, liquidation, and winding up of all insurance companies or associations which are organized under the laws of Pennsylvania. Section 510 of The Insurance Department Act provides the method which shall be pursued by the Insurance Commissioner when he has liquidated any company, association, exchange, society, or order, but there is no provision made in this section or in any prior or subsequent section of this act for the levying of an assessment or enforcing contingent liability against the subscribers to a reciprocal or inter-insurance exchange. Said section 510 does not provide for the levy-

ing of any assessment upon the policyholders of any type of insurance company *after* the account of the Insurance Commissioner has been filed. If the account is confirmed, the act merely provides:

"Upon confirmation of said account, if no exceptions be filed thereto, or upon the final disposition of exceptions thereto by the court, the Insurance Commissioner shall distribute the money as shown by said account or as decreed by the court, and, upon the complete distribution of all assets of said company, association, exchange, society, or order, he shall report the fact of said distribution to the court."

There is no procedure provided in the act for the making of any decree for an assessment against the policyholders of a mutual insurance company *after* a decree dissolving a mutual insurance company has been entered by the court. Section 503 of The Insurance Department Act provides for a method of assessment of the policyholders of mutual insurance companies, but this assessment is applicable only before a decree of dissolution has been entered and the assessment is made by the officers of the mutual insurance company after a decree of the court ordering an assessment but prior to the decree of dissolution. Section 503 provides as follows:

"Whenever proof shall be submitted to the Insurance Commissioner showing that any execution against any mutual insurance company of this State, in pursuance of judgment obtained against said company in any court of record of this Commonwealth, has been returned nulla bona by the sheriff of the county in which said company is located, it shall be his duty to notify the Attorney General, who thereupon shall apply to the court of common pleas of Dauphin County, or to a judge thereof in vacation, for an order upon such company to show cause why its business should not be closed. Upon the hearing of such rule or order, the court or judge aforesaid shall direct the officers of said company to assess and collect from the policyholders thereof a sum sufficient to satisfy

said judgment and execution and all other claims against said company, or make any other order or orders in the premises as may appear to said court or judge just and necessary. In case it shall finally appear to said court or judge that the company aforesaid cannot collect from its members sufficient funds to satisfy the claims against it, the said company shall be adjudged insolvent, and the court or judge aforesaid shall decree its dissolution, and appoint the Insurance Commissioner as receiver to take charge of its effects with like powers as hereinafter provided."

Section 503 of the Act of 1921 was a reënactment of the Act of June 23, 1885, P. L. 137, which was expressly repealed by section 701 of the Act of 1921. We think the method set out in said section 503 applies only to mutual insurance companies.

At the time when the legislature amended article X, sec. 1004 (d), of The Insurance Company Law by the Act of 1929, supra, although the legislature provided for a contingent liability of subscribers to a reciprocal or inter-insurance exchange, it failed to provide any method by which this liability could be enforced against them *after* an exchange had been ordered dissolved by the court.

In section 503, providing for an assessment of the mutual insurance companies, the assessment is made by the court directing the officers of the company to assess and collect from the policyholders a sum sufficient to satisfy all claims against the company and if it appears that the company cannot collect from its members sufficient funds to satisfy all claims, then the court shall adjudge the company insolvent and enter a decree of dissolution. Thus, the assessment provided for in the case of mutual .companies must be made by the officers after a decree of court prior to a decree of dissolution. In William Penn Motor Indemnity Exchange v. Leisey, 16 Berks 99, the directors levied the assessment; in Barford, Ins. Commr., v. Beaner Electric Co., 11 D. & C. 51, suit was brought by Barford, the Insurance Commissioner, against a policy-

holder on an assessment made by the board of directors on September 17, 1921, and it appeared that the exchange was ordered dissolved and a decree of liquidation entered by the court on November 17, 1925. In these cases suits were brought against subscribers to insolvent reciprocal or inter-insurance exchanges for an assessment, and the assessments were levied by the officers of the company prior to the dissolution.

We have been unable to find any reported cases where an assessment has been levied by the court against the subscribers to an insurance exchange after a decree of dissolution has been entered by the court. We are of opinion, in the absence of any statutory authority in The Insurance Department Act providing for the making of an assessment, that no assessment can now be made against any of the subscribers to the Keystone Indemnity Exchange on account of any contingent liability, as the exchange has been dissolved, and no request was made for such assessment before dissolution.

We have examined with care the very numerous authorities brought to our attention by counsel for the various parties to these proceedings but find nothing therein which moves us to alter the conclusion we have reached.

And now, April 13, 1938, it is ordered, adjudged, and decreed that we have no power or authority to direct an assessment to be levied against subscribers to an insolvent reciprocal or inter-insurance exchange, as the exchange has been dissolved by decree of court and the Insurance Department Act makes no provision for the levying of an assessment. Exception to the parties hereto.

### Opinion sur exceptions

WICKERSHAM, additional law judge, September 12, 1938.—This case comes before us on exception to an opinion filed by us April 13, 1938, exception being taken to our order that:

". . . we have no power or authority to direct an assessment to be levied against subscribers to an insolvent reciprocal or inter-insurance exchange, as the exchange has been dissolved by decree of court and The Insurance Department Act makes no provision for the levying of an assessment."

Our attention is now directed to section 506 of article V of The Insurance Department Act of May 17, 1921, P. L. 789, 808, which had not been brought to our attention at the time of our former decision. This section provides:

"If, on a like application and order to show cause, and after a full hearing, the court shall order the liquidation of the business of such company, association, exchange, society, or order, such liquidation shall be made by and under the direction of the Insurance Commissioner, who shall be vested by operation of law with title to all of the property, contracts, and rights of action of such company, association, exchange, society, or order as of the date of the order so directing him to liquidate. The filing or recording of such order in any record office of the State shall impart the same notice that a deed, bill of sale, or other evidence of title, duly filed or recorded by such company, association, exchange, society, or order, would have imparted. The order of liquidation shall, unless otherwise directed by the court, provide that the dissolution of the company, association, exchange, society, or order shall take effect upon the entry of such order in the office of the clerk of the county wherein such company, association, exchange, society, or order had its principal office for the transaction of business."

In accordance with the above provision of The Insurance Department Act we think the first judicial finding is the one directing the liquidation and dissolution of the exchange. Prior to the order of dissolution, the Insurance Commissioner has no authority or power to take over the exchange. Until he has taken over the exchange under the court's order of liquidation and dissolution the

Insurance Commissioner could not ask for an assessment of the subscribers because he would not know whether any such assessment would be necessary until he would fully audit the exchange's accounts and proceed with the dissolution to a stage where he could determine how much, if anything, would be available for the payment of the insurance claims and losses.

As the owner and holder of such contracts and rights providing for the imposing of contingent liability against the subscribers, as provided in the above-quoted section of the act, we think the Insurance Commissioner *has* the power to levy an assessment. Since it is by virtue of his acquiring title to the "property, contracts and rights of action" of the exchange that the Insurance Commissioner is empowered to make the assessment of the subscribers, and since he only secures title to the said property, contracts, and rights as of the date of the order of liquidation and dissolution, it would have been impossible for him to ask for an assessment prior to the making of said order of dissolution and liquidation.

In Donaldson, Ins. Commr., v. Fortna, 76 Pa. Superior Ct. 403, it was said by Judge Head (p. 406):

"The statute referred to [Act of June 1, 1911, P. L. 599] provides, inter alia, that when an order for the liquidation of the business of such an insurance company shall have been made, 'Such liquidation shall be made by and under the direction of the insurance commissioner *who shall be vested by operation of law with title to all of the property, contracts and rights of action of such corporation.*' We apprehend that the words 'liquidate' and 'liquidation,' used in the statute, need no interpretation or judicial construction. In the use of those words the legislature simply directed its officer to gather together the assets of the defunct company, convert them into cash and apply their proceeds to the payment of the expenses of liquidation and the discharge, in whole or in part, of the debts due to the creditors. . . ". (Italics supplied).

We think this case is authority for our present position in the instant case as the portion of the statute here under discussion relating to the acquisition of title in the Insurance Commissioner is exactly similar to a provision in the Insurance Act of June 1, 1911, P. L. 599.

In the Donaldson case, the insolvency of the company was judicially ascertained in October 1916, and the decree was then entered dissolving the corporation and ordering the liquidation of its business; the levying of the assessment did not occur until several years thereafter.

As we have above stated, section 506 of The Insurance Department Act of 1921 provides that, as to exchanges and mutual companies, the Insurance Commissioner's control in the liquidation does not come into being until the order of the court decreeing dissolution and liquidation. It therefore follows that all the proceedings for the assessment must follow after the decree of dissolution and liquidation.

Direct authority for the making of the assessment subsequent to the court's order of dissolution is found in McCulloch, Ins. Commr., v. Haddad, 93 Pa. Superior Ct. 540, Taggart, Ins. Commr., v. Graham, 108 Pa. Superior Ct. 320, and Commonwealth ex rel. v. Rural Valley Mutual Fire Ins. Co., 41 Dauph. 40.

We are of opinion, therefore, since section 506 of The Insurance Department Act of 1921 provides that as soon as the court shall find an exchange is insolvent, it shall make the decree of liquidation and dissolution, and as of that date the Insurance Commissioner becomes vested with the title to the assets of the exchange including the right to sue for assessments, that the proceedings for the assessment must of necessity be subsequent to the original decree of dissolution.

Section 1004 of The Insurance Company Law of May 17, 1921, P. L. 682, was amended by the Act of April 9, 1929, P. L. 464, section 1 of which provides:

"Such subscribers, so contracting among themselves, shall, through their attorney, file with the Insurance

Commissioner of this Commonwealth a declaration, verified by the oath of such attorney, setting forth . . .

"(*d*) A copy of the form of power of attorney, or other authority of such attorney, under which such insurance is to effected or exchanged, and which shall provide that the liability of the subscribers, exchanging contracts of indemnity, shall make provision for contingent liability, equal to not less than one additional annual premium or deposit charged."

It appears, however, from the report of the Insurance Commissioner that the present exchange (disregarding said Act of 1929) continued, until September 4, 1930, to issue contracts which stated that they were nonassessable; and from September 4, 1930, to May 18, 1933 (when the exchange passed into liquidation), all or most of the contracts carried a provision known as "paragraph N" which called for an additional assessment "not to exceed, however, the annual premium or deposit charged herein."

We are of opinion defendant was operating in violation of law when it issued nonassessable policies after the passage of said Act of 1929, and that in levying an assessment as hereinbefore indicated, all subscribers of defendant exchange holding contracts exchanged subsequent to the passage of said Act of April 9, 1929, are liable for this assessment. In Couch, Cyclopedia of Insurance Law 297 §150, we find the following:

"Statutory laws as part of the contract.—Contracts of insurance are presumed to have been made with reference to the law of the land, including the statutory laws which are in force and are applicable, and such laws enter into and form a part of the contract, as much as if actually incorporated therein. And this rule applies as well to certificates in mutual benefit societies, associations, and the like. And where applicable statutes have been construed by the courts, settled judicial constructions become a part of the statute itself and a part of the

obligation of the contract." And in 32 C. J. 1162, §274, we find the following:

"A statute applicable to a contract of insurance and in force at the time of the making of the contract enters into and forms a part thereof in the same manner as if it had actually been written or copied therein, and, in construing the terms of the policy, the statute is to be read in connection therewith, notwithstanding a subsequent amendment or repeal of the statute; but of course the rule does not extend to a statute which is not applicable or to one enacted subsequent to the making of the contract. And it is held that, whatever the language of the policy may be, the law reads into the contract a provision required by the state insurance commissioner. The parties to the contract cannot waive an applicable statutory provision, that is, a statutory provision for the benefit of insured cannot be contracted away, but it is held that a provision for the benefit of the company may be insisted upon or waived by it as it chooses."

Furthermore, the absence of the assessment provision from the exchange contracts prior to September 4, 1930, was due to the failure of the Keystone Indemnity Company to comply with the requirements of the Act of 1929. Inasmuch as the Keystone Indemnity Company was the agent or the attorney-in-fact for the exchange subscribers, the subscribers cannot now be heard to set up the defense that they are not assessable, because the contracts did not contain an assessable clause. The principal cannot hide behind his agent's failure to comply with the mandate of the legislature.

In fixing the amount of the assessment, we must take into consideration the fact that, due to insolvency, bankruptcy, death, etc., the assessment cannot be collected from every subscriber; and it is therefore essential that the amount of the assessment be large enough to permit allowance to be made for such contingencies: Buckley v. Columbia Ins. Co., 92 Pa. 501; The Susquehanna Mutual Fire Ins. Co. v. Gackenbach et al., 115 Pa. 492. We

think the amount of the assessment should also be large enough to cover collection and liquidation costs: The Mutual Security Co. v. Blumenthal & Co., Inc., 86 Conn. 667, 86 Atl. 573, including the cost of computing the pro rata liability of each subscriber.

The liquidator has recommended the allowance of claims totaling $291,456.55. The amount of cash available in the hands of the liquidator as of September 1, 1937, the date of his first report, was $8,017.46.

We are of opinion, therefore, that an assessment of one annual premium or deposit charged on each policy or contract issued to them must be charged all subscribers of defendant exchange holding contracts exchanged and issued from April 9, 1929, to May 18, 1933, and that such assessment will be sufficient for all purposes in the instant case, including losses of the exchange unpaid at date of dissolution, and other legal obligations, expenses of administering said estate, and including the cost of computing the pro rata liability of each subscriber.

And now, September 12, 1938, it is ordered, adjudged, and decreed that the exception of the statutory liquidator to our opinion and decree in this case filed April 13, 1938, is sustained, and the exceptions filed on behalf of subscribers relating to the levying of an assessment are hereby dismissed; and it is further ordered and decreed that the subscribers of Keystone Indemnity Exchange holding policy contracts exchanged among said subscribers and issued from April 9, 1929, to May 18, 1933, shall pay an amount equal to one annual deposit premium on each policy issued to them, provided for by the Act of April 9, 1929, P. L. 464, for the purpose of paying losses of said Keystone Indemnity Exchange unpaid at date of dissolution, and other legal obligations, expenses of administering said estate, as set forth in the reports of the liquidator, including the computing of the pro rata liability of each subscriber; and any excess over and above the amount needed for the payment of losses, other legal obligations, and expenses of administering said estate,

including the computing of the pro rata liability of each subscriber, shall be redistributed ratably to the subscribers from whom collected.