[Civ. No. 29419. Second Dist., Div. Five. Apr. 21, 1967.]

RICHARD S. L. RODDIS, as Insurance Commissioner, etc., Plaintiff and Respondent, v. ALL-COVERAGE INSURANCE EXCHANGE AUTOMOBILE AND FIRE et al., Defendants and Respondents; WILLIAM STRONG, Petitioner and Appellant.

William Strong, in pro. per., for Petitioner and Appellant.

Thomas C. Lynch, Attorney General, and Arthur C. de Goede, Deputy Attorney General, for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

HUFSTEDLER, J.—Strong appeals from an order denying his application for attorney's fees for his representing All-Coverage Insurance Exchange Automobile and Fire ("Exchange") and its attorney-in-fact, All- Coverage Underwriters, Inc. ("Underwriters"), in their efforts to terminate the Insurance Commissioner's conservatorship of both organizations, contending that the trial court did not give him a "full hearing" on his applications for fees and that the trial court abused its discretion in refusing to award him reasonable fees from the insolvents' assets in the conservator's hands.

The principles of law controlling an award of attorney's fees in resisting conservatorship are stated in *McConnell* v. *All-Coverage Ins. Exchange* (1964) 229 Cal.App.2d 735 [40 Cal.Rptr. 587], a case affirming an award of attorneys' fees and expenses in favor of the attorneys who initially handled the litigation for the same clients, Exchange and

Underwriters, at the threshold of the same conservatorship: The trial court in its discretion may award reasonable attorneys' fees to counsel for a company defending itself against conservatorship if, considering all of the facts and circumstances in the particular case, the court is satisfied that resistance to conservatorship be in good faith and upon reasonable grounds.

### Summary of the Facts

Exchange is an organization of persons who exchange reciprocal insurance contracts with each other. The sole business of Underwriters, a California corporation, is to act as attorney-in-fact for the subscribers or policyholders of Exchange and to perform certain services for Exchange pursuant to a contract between Exchange and Underwriters. The capital stock of Underwriters is owned principally by R. G. Horwitz and his brother-in-law, H. M. Robbins. Horwitz was simultaneously chairman of the board of governors of Exchange and president of Underwriters.

On November 21, 1962, the Insurance Commissioner, pursuant to section 1011 of the Insurance Code, filed an application for appointment of a conservator for Exchange and Underwriters, averring among other things that Exchange was insolvent, that its report of reserves filed with the Department of Insurance erroneously stated its reserves, that Exchange had willfully removed certain records from its files to mislead the Insurance Commissioner about the true condition of Exchange, and that Exchange paid over $200,000 upon a liability which was Underwriters'. The application was granted on the date it was filed, and the conservator took immediate possession of Exchange and Underwriters. Through their counsel, Wright, Wright, Goldwater & Mack and Neil Cunningham, Exchange and Underwriters answered and filed on January 7, 1963, a petition to terminate the conservatorship. The attorneys for Exchange and Underwriters applied for an order directing payment of a retainer to them from funds in the hands of the conservator and payment of a sum to employ accountants to examine the books and records of the two organizations. An order was made in April of 1963 allowing $2,500 from the assets of Exchange and $2,500 from the assets of Underwriters on account of costs and attorneys' fees, and further allowing $3,843.60 for accounting expenses. This order was affirmed on appeal in the *McConnell* case, *supra,* 229 Cal.App.2d 735.

Extensive discovery proceedings were begun both by the

commissioner and by Exchange and Underwriters shortly after the answer and the petition to terminate conservatorship were filed and were not completed until some time after April 10, 1963. Full hearing, as required by section 1012 of the Insurance Code, was continued until June 26, 1963, at which time the original counsel moved successfully to withdraw from the case. During the period from July 8 to November 20, 1963, Exchange and Underwriters were represented by another lawyer, Richman, who also withdrew from the case. Hearing on the merits was again continued to December 9, 1963, at which time Strong appeared upon behalf of Exchange and Underwriters, and at his request, still an additional continuance was granted to February 19, 1964. Following the direction of the trial court, Exchange and Underwriters first presented their evidence on their amended petition to terminate the conservatorship, which consumed 34 court days, at the conclusion of which the court granted the commissioner's motion for judgment, under authority of section 631.8 of the Code of Civil Procedure. The petition of Exchange and Underwriters was denied. The trial court found that Exchange at all material times was insolvent, that as of March 31, 1964, the excess of its liabilities over its assets was more than $500,000, that it understated its liabilities in its reports to the commissioner, that Exchange and Underwriters manipulated the finances between the two organizations, resulting in serious financial detriment to Exchange, and that Exchange withheld without cause certain records from the inspection of the examiner from the commissioner's office.

Strong filed two applications for fees, costs, and disbursements. The first was heard on February 14, 1964. In support of his application he filed solely his own declaration reciting that he had received no money from Exchange or Underwriters although he was to receive certain stock, which would be of value only if the case terminated favorably to Exchange and Underwriters.[1] He said that he had already devoted more than 150 hours in preparation for the trial, and that he expected the trial (which had not then begun) to last from two to three months. He set out his professional background

---

[1]Strong's oral motion to augment the appellate record by including a copy of his contract with Underwriters, which document was not offered to the trial court, is denied. (*E.g., Stern* v. *Hillman* (1930) 109 Cal.App. 294, 295 [292 P. 1011].) The contract, if received, would have been merely cumulative, because the facts were before the trial court by way of Strong's declaration.

and concluded with a request that an order be made directing payment to him from the assets in the conservator's hands of interim fees in the sum of $25,000 and an additional $5,000 for costs. There were no facts stated in his declaration from which it could be concluded that continued resistance to conservatorship by Exchange and Underwriters was in good faith and reasonably justified. Unlike the fee application in *McConnell*, no evidence was presented that Exchange and Underwriters were advised that continued resistance was reasonable. No transcript has been brought before us to tell us what occurred at the time of the hearing on the original order to show cause, other than a minute order reciting that after a discussion "request for attorney's fees and costs is denied without prejudice." The second order to show cause was heard on August 14, 1964, after the cause had been heard on the merits. Again, the application is supported solely by Strong's declarations. The first declaration averred the same facts earlier presented and added a recital of the work he had done in presenting the cause for trial, the difficulties of the litigation, and the benefit he believed the court and his clients had derived from his efforts. The declaration concluded with a request for an order directing payment of $50,000 fees to him. In a supplemental declaration he said that he should receive favorable consideration because, due to his pressing demands, the conservator was going to enforce provisions of an assessment order against the policyholders. Again, no facts are set forth in his supporting declarations to show that the cause was presented in good faith by his clients, or that his clients' continued resistance to conservatorship was reasonably justified. The Insurance Commissioner responded with a combination answer and general demurrer, in which the conservator asserted affirmatively that resistance was not based on reasonable grounds and was not pursued in good faith.

### No Denial of Hearing

Strong's contention that the trial court denied him a hearing is not supported by the record. Pursuant to an order to show cause Strong's last fee application was heard on August 14, 1964. At that time Strong offered to stipulate that if he were called to testify, he would testify on direct examination in accordance with the terms of his declarations submitted with his application for fees and that opposing counsel could cross-examine him. Opposing counsel refused the stipulation. Strong did not offer any evidence in addition to that contained in his declaration, and he did not seek any

opportunity to present further evidence. In response to the court's inquiry, ''Do you have anything further?'' Strong replied, ''I think I have stated in capsulated form as much as I can '' Strong cannot now complain that he was not fully heard on his fee applications.

### No Abuse of Discretion

To prevail on appeal Strong must establish that the court abused its discretion in denying his application for fees. No abuse of discretion is shown unless Strong can demonstrate from the record on appeal that (1) there was no substantial evidence before the trial court from which the trial court could have based its implied finding[2] that Strong's clients' continued resistance to conservatorship was not in good faith or was not on reasonable grounds, and (2) there was substantial evidence before the trial court from which it could have found that the requisites of the good faith and reasonable grounds of his clients supported an award of fees.

To support an award of fees to him Strong had the burden of proving not only the time and effort he expended in defending his clients in complex and prolonged litigation, but also his clients' good faith and the existence of reasonable grounds for continued resistance to conservatorship. (*E.g., McConnell* v. *All-Coverage Ins. Exchange, supra,* 229 Cal. App.2d at 746; *Caminetti* v. *State Mutual Life Ins. Co.* (1942) 52 Cal.App.2d 326, 327-328 [126 P.2d 169]; *Pratt* v. *Robert S. Odell & Co.* (1942) 49 Cal.App.2d 550, 563-564 [122 P.2d 684]; *Anderson* v. *Great Republic Life Ins. Co.* (1940) 41 Cal.App.2d 181, 191-192 [106 P.2d 75].) Although his declarations may be adequate as prima facie proof of the legal work he performed for his clients, nothing in the declarations or in any other evidence which appears in the record before us would support an implied finding that the other prerequisites for his recovery of fees have been met. Although the transcript of the oral proceedings in the hearing on the merits is not before us, we can glean from the court's findings, conclusions and memorandum opinion, which are a part of the appellate record, a distillation of the proceedings on the merits, and from that essence the trial court's implied findings that continued resistance was not in good faith or was not on reasonable grounds are sustained, not refuted. From these documents the implication is plain that at the time

---

[2]No express findings were required. (*McConnell* v. *All-Coverage Ins. Exchange, supra,* 229 Cal.App.2d 745-746.)

Strong was retained, his clients knew that Exchange and Underwriters were insolvent, that the financial foundations of both organizations were so seriously eroded that further transaction of their business was hazardous to Exchange's policyholders, creditors and members of the public, and that the principals in both concerns deliberately misled the commissioner about the financial condition of Exchange to stave off remedial state action, and that the principals likewise knew and participated in the financial manipulations between the two concerns which resulted in serious losses to Exchange. The good faith of Exchange and Underwriters does not irresistibly shine through this record. Strong's good faith in representing his clients is in no respect questioned and the record in no way impugns him personally.

There are material differences between Strong's application for fees and the application for fees and costs filed by the attorneys who initially represented Exchange and Underwriters. At the outset of the litigation, the then counsel, by declarations, affidavits, documentary evidence, and oral testimony, made out a prima facie showing that the defense was at that time presented in good faith. One of the attorneys at that time testified that he had personally conducted an investigation into the matters raised by the conservatorship, and that in his opinion as an expert in insurance law, there was a valid defense, and the defense was being taken in good faith. (*McConnell* v. *All-Coverage Ins. Exchange, supra,* 229 Cal.App.2d at 739-744.) By the time Strong entered the case the factual picture had profoundly changed. The financial situation of the two concerns had been subjected to the trained scrutiny of accountants hired for the benefit of Underwriters and Exchange, extensive discovery had been completed on both sides, the proceedings had been punctuated by two appeals on various aspects of the case, and the financial condition of both concerns had progressively deteriorated, due primarily to the multiple delays occasioned by the continued resistance to conservatorship by Underwriters and Exchange. Strong's clients were obviously aware of these developments in the case, and they had no reasonable cause to assume that an implied finding of good faith and reasonable cause for the defense in the fall of 1962, in the light of facts then appearing, would carry them unscathed through a maze of accumulating evidence against Underwriters and Exchange and a trial on the merits ultimately resulting in their being ''nonsuited,'' pursuant to section 631.8 of the Code of Civil

Procedure, in 1964. (See *McConnell* v. *All-Coverage Ins. Exchange, supra,* 229 Cal.App.2d at 745; *Esarey* v. *Pierson* (1923) 84 Ind.App. 109 [141 N.E. 87, 88].)

Strong implies that the trial court owed him some kind of duty to compensate him for his legal services because the court refused to permit Exchange and Underwriters to pursue their cause without counsel or to permit Horwitz to appear on their behalf. The trial court was entirely correct in requiring Exchange and Underwriters to appear by counsel admitted to practice in California. A corporation cannot appear in propria persona. A person who is not an attorney authorized to practice law in this state cannot represent anyone other than himself. (*Himmel* v. *City Council* (1959) 169 Cal.App.2d 97, 100-101 [336 P.2d 996]; *Paradise* v. *Nowlin* (1948) 86 Cal.App.2d 897, 898 [195 P.2d 867].)

The order is affirmed.

Kaus, P. J., and Stephens, J., concurred.