[Civ. No. 35622. Second Dist., Div. Two. Oct. 19, 1971.]

RICHARD D. BARGER, as Insurance Commissioner, etc.,
Plaintiff and Respondent, v.
ALL-COVERAGE INSURANCE EXCHANGE, AUTOMOBILE AND
FIRE, Defendant and Appellant.

## COUNSEL

Talmadge M. Hagee for Defendant and Appellant.

Evelle J. Younger, Attorney General, and Arthur C. DeGoede, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**HERNDON, J.—**

### Statement of the Case

At issue in this appeal is the disposition of moneys collected through an assessment of the policyholders of All-Coverage Insurance Exchange, a reciprocal insurer, appellant herein. The assessment, levied pursuant to the provisions of section 1062 of the Insurance Code, produced a fund which was more than sufficient to pay all approved claims in full.

The trial court ordered that the proceeds of the assessment in excess of the amount required to pay claims be refunded to the policyholders from whom the moneys had been collected. Appellant contends that these excess funds should be used to restore its surplus and that the court below erred in instructing respondent to refund the excess assessment moneys prior to ruling on appellant's petition for rehabilitation.

We have concluded that there is no merit in any of appellant's contentions. The order presented for review was made in conformity with both the applicable law and the dictates of equity.

### Statement of the Facts

On November 21, 1962, the commissioner was appointed conservator of appellant pursuant to section 1011 of the Insurance Code because of insolvency, false reports of financial condition, withholding of records and improper financial transactions between the exchange and its attorney-in-

fact. (See *Roddis* v. *All-Coverage Ins. Exchange*, 250 Cal.App.2d 304, 306-307 [58 Cal.Rptr. 530].)

On May 3, 1963, the commissioner filed a Report Pursuant to Insurance Code Section 1062 and a Petition for Instructions and Orders re Levying an Assessment. The report set forth a determination of the probable necessary assessment to pay all claims of the Exchange in full, and to restore the statutory surplus required by Insurance Code section 1371. The commissioner prayed that the court make its order determining the basis for calculating the liability of each subscriber.

By an amendment to the report filed on October 24, 1963, and based upon more current financial information, the commissioner advised the court of his determination that it would be futile for him to continue as conservator, and that he was presently preparing his petition for an order to liquidate and wind up the affairs of All-Coverage. Said amendment set forth a redetermination of the probable necessary assessment to pay all claims in full. A second amendment to the report estimated the amount by which any assessment would prove to be uncollectible.

The commissioner also filed his Application for Order Appointing Liquidator under section 1016 on October 24, 1963. Hearing thereon was set for November 18, 1963, but was postponed pending a hearing on All-Coverage's petition to terminate the conservatorship earlier filed on January 3, 1963, and ultimately denied after numerous delays in hearing on August 13, 1964. (*Roddis* v. *All-Coverage Ins. Exchange, supra,* 250 Cal.App.2d 304, 307.)

On November 20, 1963, the court below entered its order determining the basis for calculating the liability of each policyholder of All-Coverage. The court determined that reasonably anticipating that not all of the assessment would be collected due to various factors, the "probable necessary assessment to pay all claims against [All-Coverage] in full" including expenses of administration was the maximum assessment, to wit, 100 percent of the premium earned on a member's policy during the one-year period immediately preceding the appointment of the commissioner as conservator. The court further recited in its order that its basis for calculation did not include the creation of any surplus and that it made no order in relation thereto.

Sufficient moneys were collected through the assessment to pay all approved claims in full. On March 27, 1969, the commissioner petitioned the court for instructions on the application of the assessment funds in excess of that necessary to pay claims. The court's order thereon filed on *August 15, 1969,* recites that notice of hearing on said petition was duly

given in accordance with the court's order and that assessment funds collected in excess of that necessary to pay all approved claims should be refunded pro rata to the members. of All-Coverage who had paid the assessment. It is from this order that the instant appeal is taken.

### Assignments of Error

Appellant's assignments of error are as follows: (1) The trial court erroneously held that the assessment was levied under section 1057 and 1062 (providing for assessment to pay claims in full with no mention of surplus) rather than the first sentence of section 1391 (providing for an assessment toward surplus); (2) the court should not have ruled on the disposition of excess assessment funds prior to ruling on All-Coverage's petition for rehabilitation; and (3) The court's order directing a pro rata refund to the policyholders of excess assessment funds deprived All-Coverage of contractual rights.

### The Levy of an Assessment on Policyholders of a Reciprocal Insurer After the Appointment of a Conservator Is Governed by Insurance Code Section 1062 Which Makes No Provision for an Assessment to Restore Surplus.

█ It is undisputed that section 1062 is the proper section under which to proceed with respect to the levying of an assessment, but upon the basis of an incomplete quotation of the statute, appellant advances the argument that said section does not specify the purposes for which the assessment proceeds shall be used. The argument is fallacious. Section 1062 expressly provides that in a delinquency proceeding ". . . affecting any [insurer] having members . . . who are liable for assessment . . ., the liability of such members shall be determined, and the assessment therefor levied in the following manner:

"1. . . . [T]he commissioner shall make a report to the court setting forth: (a) the reasonable value of the assets . . . ; (b) [the] probable liabilities, including reasonable costs of liquidation; and (c) the probable necessary assessment . . . to pay all claims in full.

"2. Upon the basis of such report, . . . the court shall determine the basis for calculating the liability of each member, . . ."

It is quite clear from the language of section 1062, providing for an assessment in the amount probably necessary to pay all claims in full, based upon a report setting forth the reasonable value of assets and the probable liabilities, including reasonable costs of liquidation, that it does *not* provide for an assessment to restore surplus.

Appellant argues that section 1062, when read with section 1391, requires that the assessment include an amount necessary to restore surplus where the assessment is made prior to an order for liquidation under section 1016. But section 1062 is specifically and expressly applicable. "[i]n the event of the entry of an order under sections 1011 or 1016" appointing a conservator or a liquidator. Moreover, to the extent that any conflict might be found between the specific provisions of section 1062 and the general sections governing reciprocal insurance exchanges such as section 1391, the provisions of section 1062 would control.

In *Beha* v. *Weinstock*, 247 N.Y. 221 [160 N.E. 17], it was held that the corresponding New York statute governing assessment procedures in delinquency proceedings prevailed over the general statutes governing reciprocal insurers. Section 1062 was enacted into the insurance laws of this state in 1935 and was copied substantially from the New York insurance law (now § 541 of ch. 28 of the Consolidated Laws of New York). (See *Carpenter* v. *Pacific Mut. Life Ins. Co.,* 10 Cal.2d 307, 328 [74 P.2d 761]; *Caminetti* v. *Superior Court,* 16 Cal.2d 838, 844 [108 P.2d 911].) The history of the New York statute is pertinent (*Caminetti* v. *Superior Court, supra,* at p. 844), and this state will normally construe an adopted statute in the same manner as interpreted by the courts of the state of its origin. (*Canfield* v. *Security-First Nat. Bank,* 13 Cal.2d 1, 14-15 [87 P.2d 830]; *Holmes* v. *McColgan,* 17 Cal.2d 426, 430 [110 P.2d 428].)

However, we find no conflict between sections 1062 and 1391. Section 1391 is specific in its provision for an assessment where liquidation has been ordered but is silent with respect to the situation where only a conservatorship has been ordered, whereas section 1062 is specific in this latter situation. The first two sentences of section 1391 clearly relate to the period of time when an exchange is not involved in a delinquency proceeding but is being operated by the attorney-in-fact who remains in a position to make the assessment. When a conservatorship has been ordered under section 1011 and the commissioner has been placed in exclusive charge of the business and affairs of the Exchange, the provisions in section 1391 requiring the attorney-in-fact to make an assessment to restore surplus have no relevancy.

Moreover, assuming *arguendo* that an assessment ordered prior to the entry of a liquidation order may include provision for surplus, it is a significant fact in this case that prior to the court's order of November 20, 1963, determining the basis for calculating the liability of appellant's members, the commissioner had made his determination that it would be futile to continue as conservator and had filed his Application for Order Appointing Liqui-

dator on October 24, 1963. Hearing was set thereon for November 18, 1963, but was continued pending the hearing on appellant's petition under section 1012 to terminate the conservatorship altogether. Appellant's delay in bringing that petition to hearing and the length of the hearing (see *Roddis* v. *All=Coverage Ins. Exchange, supra*) unduly extended the time in which the liquidation order was issued. Thus, the fact that the order appointing the liquidator was entered a few days after the assessment order is of little or no consequence.

The trial court's decision that the excess assessment funds should be returned to the assessees is supported by decisions of other states. In the Pennsylvania case of *Keystone Indemnity Exchange* the court ordered that any excess in the amount of assessments collected be redistributed pro-ratably to the subscribers from whom collected. (*Commonwealth* ex rel. *Schnader* v. *Keystone Indemnity Exchange*, 46 Dauph. Co. 101, 106-107, 34 Pa. D. & C. 505, 521-522, affd. 335 Pa. 333 [6 A.2d 821].) In other cases contentions that assessments were void because funds more than sufficient to meet liabilities might be collected have been rejected with comment that in such event the surplus would be refunded to those from whom it had been collected. (*In re Wisconsin Mut. Ins. Co.*, 241 Wis. 394 [6 N.W.2d 330, 336]; *Howard* v. *Whitman*, 29 Ind. 557; see also, *Daniel* v. *Citizens' Mut. Fire Ins. Co.*, 149 Mich. 626 [113 N.W. 17, 18].)

*The Trial Court Did Not Err in Instructing the Commissioner on the Disposition of Excess Assessment Moneys Prior to Ruling on Appellant's Petition for Rehabilitation.*

Appellant contends that the trial court's instructions regarding the disposition of excess assessment moneys should have awaited a ruling on the petition for rehabilitation. This argument necessarily is based upon the untenable premise that the excess assessment proceeds could be used for the restoration of surplus. Since the proceeds of an assessment levied under section 1062 could not be so used, there was no need to await a decision on the rehabilitation petition. If the plan of rehabilitation did not depend upon the use of assessment money, it was immaterial that there had been no ruling on the petition for rehabilitation.

Moreover, we take judicial notice of the records of this court in All-Coverage Insurance Exchange v. Superior Court, 2d Civil No. 27798. Those records disclose the complete lack of substance in appellant's plan of rehabilitation. The records in the last cited proceedings and the prior decisions of this court relating to the affairs of this appellant tell the sad story of a mismanaged company which now, after some nine years of futile litigation, should be finally laid to rest.

### The Court's Order for Pro Rata Refund of Assessment Moneys Did Not Deprive Appellant of Contractual Rights.

■ Appellant's argument that the court's order for a pro rata refund of excess assessment funds unlawfully deprived it of contractual rights is essentially an argument that section 1062 and the last sentence of section 1391 are unconstitutional in not providing for an assessment for surplus.

The following from *Carpenter* v. *Pacific Mut. Life Ins. Co., supra,* 10 Cal.2d 307, 329, is deemed a sufficient refutation of appellant's argument: "It is no longer open to question that the business of insurance is affected with a public interest. The state has an important and vital interest in the liquidation or reorganization of such a business. [Citations.] Neither the company nor a policyholder has the inviolate rights that characterize private contracts. The contract of the policyholder is subject to the reasonable exercise of the state's police power. The only restriction on the exercise of this power is that the state's action shall be reasonably related to the public interest and shall not be arbitrary or improperly discriminatory. Sections 1010 et seq. of the Insurance Code deal with rehabilitation and liquidation of insurance companies in financial difficulties, and with the reinsurance of their business. This phase of state control is extremely important."

We find nothing arbitrary or unreasonable in a statutory provision that where the financial condition of a reciprocal insurer has deteriorated to such extent that it should be placed in conservatorship or liquidation, an assessment against members may be levied, not to restore surplus but only to provide for payment of all claims. It may be noted here that under the present reading of section 1062, it is within the sound discretion of the commissioner whether an assessment "would be in order" when he proceeds under that section.

The *Pacific Mutual* decision above cited sets forth the principle asserted by appellant that rehabilitation of an insurer is preferable to liquidation (10 Cal.2d at p. 329), but it is obvious that each case depends on its own set of facts. Certainly there is something more than a "theoretical detriment" to policyholders if the assessment moneys paid by them are used to restore surplus rather than partly refunded to them. The fact that all of appellant's policies have long ago expired or been cancelled is disclosed by the record in *Roddis* v. *All-Coverage Ins. Exchange, supra.* The grief necessarily suffered by the thousands of policyholders from whom the assessment was collected would readily explain their objection to the use of their moneys to restore surplus.

Appellant is in no position to assert that the commissioner misinformed the court in his estimate that a 100 percent assessment would be needed to

pay all claims in full in view of the fact that appellant itself "approved and concurred" in the petition to levy a 100 percent assessment "in order to provide funds necessary to pay the liabilities of the Exchange in excess of its assets," a fact also disclosed by the record in *Roddis* v. *All-Coverage Ins. Exchange, supra.*

The order under review is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied November 15, 1971, and appellant's petition for a hearing by the Supreme Court was denied December 16, 1971.