Filed 7/30/13  Legaspi v. Spivak CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TODD LEGASPI et al., <br><br>     Plaintiffs and Respondents, <br><br> v. <br><br> KENIN M. SPIVAK et al., <br><br>     Defendants and Appellants. | B240274 <br> (Los Angeles County <br> Super. Ct. No. BC469228) |

APPEAL from an order of the Superior Court of Los Angeles, William F. Highberger, Judge.  Affirmed.

SML, Kenin M. Spivak and Theodore Maloney; Brookstone Law, Vito Torchia, Jr. and Sasan Behnood for Defendants and Appellants SML LLP, Edwin I. Lasman, Theodore Maloney, Kenin M. Spivak, Brookstone Law, Vito Torchia, Jr. and Damian Kutzner.

No appearance for Plaintiffs and Respondents Todd Legaspi et al.

In the underlying action, the plaintiffs asserted claims against several attorneys, their law firms, and a firm employee arising out of litigation initially filed as *Ronald v. Bank of America* (Los Angeles Superior Court Case No. BC409444) (the *Ronald* action). The trial court granted the defendants' motion under Code of Civil Procedure section 425.16 -- the law designed to curtail the filing of strategic lawsuits against public participation, often called the "anti-SLAPP law" -- and struck the complaint, but denied the defendants' requests for attorney fee awards.[1] After the plaintiffs noticed an appeal from the dismissal, the defendants cross-appealed from the fee award rulings. The appeal was later dismissed, leaving only the cross-appeal to be resolved. We conclude that the trial court did not err in declining to award attorney fees, and thus affirm.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A. *The Ronald Action*

In March 2009, attorney Mitchell J. Stein and his law firm, together with attorneys Bridget Jones and Christopher Tomaszewski of Apex Legal Group PC (Apex), filed the *Ronald* action on behalf of a group of 17 mortgagors. The complaint contained claims against several financial institutions for fraud, unfair competition, and other causes of action. In 2010, as the number of plaintiffs increased, attorneys Kenin Spivak, Erickson M. Davis, and Theodore Maloney became counsel of record. Stein and Spivak acted as lead co-counsel. In early 2011, Spivak, Maloney, and attorney Edwin I. Lasman formed SML LLP (SML). Shortly afterward, Jones and Tomaszewski became "of counsel" to SML, for purposes of litigating the *Ronald* action.

---

[1] All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

In March 2011, SML and Apex filed a motion to remove Stein as co-lead counsel and to bar Davis from rendering legal services to the movants' clients. They argued that Stein had disrupted the legal team in several ways, including claiming Spivak's clients as his own, failing to cooperate regarding court filings, and disseminating false information to solicit new plaintiffs. They also maintained that Davis was aligned with Stein in these matters.

Stein and Davis asked the trial court to deny the pending motion and instead order that Spivak, Jones, and Tomaszewski withdraw as counsel. They alleged that Spivak, Jones, Tomaszewski, and SML had joined with attorney Vito Torchia and his law firm, Brookstone Law, PC (Brookstone), to pursue a rival mortgagor action, namely, *Wright v. Bank of America* (Orange County Case No. 30-2011-00449059-CU-MT-CXC) (the *Wright* action), and had falsely marketed themselves as "Mitchell J. Stein" to obtain clients for that action. Stein and Davis described Brookstone as a "boiler room."

SML and Apex's reply denied the existence of the alleged partnership with Brookstone. They submitted a declaration from Torchia, who stated that Brookstone was not a "'boiler room,'" and maintained that Stein's account of the underlying events "turned the world on its head." According to Torchia, beginning in October 2010, Stein met with Brookstone to discuss how it might participate in the *Ronald* action or the then-proposed *Wright* action. During the discussions, Stein said that he wanted to work with Brookstone to file "mass joinder" lawsuits in various states. In November 2010, Torchia and Brookstone hired Stein and SML to represent them in some unrelated matters. Later, after Torchia rejected aspects of Stein's proposed marketing plan for the *Wright* action on ethical grounds, Torchia's relationship with Stein deteriorated. In March 2011, Stein withdrew from his representation of Torchia and Blackstone.

3

On April 6, 2011, the trial court in the *Ronald* action (Judge William F. Highberger) granted SML and Apex's motion in part, and severed the action into two actions. Plaintiffs who identified SLM or Apex as their counsel were assigned to the first action (*Ronald I*), and plaintiffs who identified Stein or Davis as their counsel were assigned to the second action (*Ronald II*). In July 2011, Stein and Spivak executed a "Separation Agreement" regarding the two actions that provided in pertinent part: "No party will commence legal action against any other party to this Agreement for matters arising prior to the execution hereof, excluding only actions for indemnification pertaining to third party claims."

B. *Underlying Action*

On September 19, 2011, Stein and Davis filed the underlying complaint.[2] Although the complaint's caption page did not list Stein among the plaintiffs, his name appeared on the page, which characterized him as acting in propria persona; in addition, the body of the complaint contained allegations describing him as a plaintiff.[3] The complaint further alleged that "most" of the plaintiffs in the *Ronald* action were plaintiffs in the underlying action.

---

[2] In August and September 2011, Stein and Davis also initiated several other lawsuits involving allegations against Spivak and Torchia. Because those lawsuits are irrelevant to the issues before us, we omit them from our summary of the facts.

[3] Regarding Stein's status as a purported pro se litigant, we note that in August 2011, the Attorney General of California and the State Bar of California initiated actions against Stein and his law firm, alleging that he used deceptive marketing methods to obtain clients for mass joinder lawsuits against mortgage lenders. According to the Attorney General's complaint, Stein "prey[ed] on desperate consumer homeowners facing foreclosure and the loss of their homes . . . ." The trial courts in the actions issued interim orders barring Stein from participating in unlawful marketing practices, and affording the State Bar jurisdiction over his practice. Later, the State Bar Court ordered that Stein be enrolled as an inactive member of the State Bar of California, effective January 1, 2012. In March 2012, in dismissing the underlying action under the anti-
*(Fn. continued on next page.)*

4

The complaint's caption page identified Spivak, Lasman, Maloney, and SML as defendants (SML defendants).  Also named on the caption page as defendants were Torchia and Brookstone, together with Damian Kutzner, whom the complaint described as "a non-attorney who controls [Brookstone] from behind the scenes" (Brookstone defendants).  Although not named in the caption, Jones, Tomaszewski, and Apex were alleged to be defendants within the complaint.[4]

The complaint contained claims against "[a]ll [d]efendants" for fraud, legal malpractice, concealment and deceit, contribution and indemnity, appropriation of name and likeness, and unlawful use of name and likeness.  Of these, Stein asserted only the claims for misappropriation and unlawful use, and was the sole plaintiff to assert those claims.

The complaint alleged the following facts:  The *Ronald* action, which Stein initiated, was "the 'granddaddy' of all mass actions against banks resulting from the 2008 meltdown."  As the number of plaintiffs increased in that action, Stein expanded the legal team to include Jones, Tomaszewski, and Spivak, who later conspired with the other defendants to eliminate Stein from the action, while misappropriating his name and distinctive dog image logo to obtain clients through advertisements and telemarketing.  Within the conspiracy, Kutzner was "[t]he leader of marketing."

In December 2011, the underlying action was determined to be a complex case related to the *Ronald I* and *II* actions, and was assigned to the trial court

---

SLAPP law, the trial court found that Stein had "*sub rosa* represent[ed] [p]laintiffs for which he was not counsel of record."

[4]    In addition, the complaint's allegations mention "Defendant Pansky," and thus apparently refer to Ellen Pansky, a legal ethics attorney whom the SML defendants consulted in the *Ronald* action.  Pansky never appeared in the underlying action and is not a party to this appeal.

5

responsible for those actions (Judge Highberger). On behalf of the SML defendants, Apex and SML filed a motion under the anti-SLAPP law to strike the complaint. Apex and SML also filed a motion to disqualify Stein and Davis, as well as a motion to strike the complaint pursuant to Civil Code section 1714.10, which establishes prefiling requirements for a complaint alleging a conspiracy between a lawyer and his or her client. On behalf of the Brookstone defendants, Brookstone filed a motion to disqualify Stein and Davis, and a joinder in the pending motions to strike. In declarations supporting these motions, Kutzner identified himself as Brookstone's chief operating officer.

In February 2012, the trial court tentatively ruled that it intended to grant the motions to strike under the anti-SLAPP law and Civil Code section 1714.10. The court also tentatively concluded that any attorney fee award under the anti-SLAPP law would be issued solely against Stein and Davis, and invited additional briefing on the propriety of an award.[5]

On March 15, 2012, the trial court granted the motions to strike, denied the motions to disqualify as moot, and denied the attorney fees requests. Regarding the motion to strike under the anti-SLAPP law, the court found that the action arose out of protected activity, as defined in the statute, and that the complaint asserted no tenable claims. On these matters, the court remarked that the complaint was "one of the most addled pieces of legal drafting which [it had] ever seen in over 40 years of legal practice . . . ." In rejecting the fee requests under the anti-SLAPP statute, the court stated: "[A] fee award is normally mandatory for [the] prevailing defendant. . . . However, . . . fees for self-representation are not

---

[5] These declarants denied any knowledge whether the defendants had committed the acts alleged in the complaint, and maintained that they had instructed Stein and Davis to dismiss them from the action.

6

allowable . . . . Based on the proof supplied and the arguments of plaintiffs and their counsel in opposition, the Court concludes that all the fees sought here are for self-representation, thinly disguised as a division of work . . . between different lawyers on the legal team."

After an appeal was noticed regarding the rulings on the motions to strike, Brookstone filed a cross-appeal from the denial of the fee requests on behalf of the defendants. On February 15, 2013, this court dismissed the appeal for failure to file an opening brief (Cal. Rules of Court, rule 8.220(a)(1)).

## DISCUSSION

Cross-appellants contend the trial court erred in denying their fee requests under section 425.16.[6] As explained below, we disagree.[7]

### A. *Governing Principles*

Subdivision (c) of section 425.16 provides that in any action subject to the anti-SLAPP law, "'a prevailing defendant . . . shall be entitled to recover his or her attorney's fees and costs.'" Under this provision, absent special circumstances, a fee award is mandatory for "any SLAPP defendant who brings a successful motion to strike." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.)

---

[6]     Throughout the remainder of this opinion, we refer to the SLM and Brookstone defendants as "cross-appellants," rather than as "appellants," to avoid confusion regarding the procedural history of the appeal before us.

[7]     No cross-respondent's brief was filed. The rule we follow in such circumstances "is to examine the record on the basis of appellant's brief and to reverse only if prejudicial error is found. [Citations .]" (*Votaw Precision Tool Co. v. Air Canada* (1976) 60 Cal.App.3d 52, 55; accord, *Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1192, fn. 7; *Carboni v. Arrospide* (1991) 2 Cal.App.4th 76, 80, fn. 2; see Cal. Rules of Court, rule 8.220(a)(2); *In re Bryce C.* (1995) 12 Cal.4th 226, 232-233.)

Pertinent here is the exception for attorney self-representation. The leading case regarding this exception is *Trope v. Katz* (1995) 11 Cal.4th 274, 277, 285-286 (*Trope*), in which our Supreme Court held that attorneys who represent themselves may not recover contract-based attorney fees under Civil Code section 1717. In so concluding, the court found no sound basis to permit self-representing attorneys and law firms to recover their fees, as nonattorney pro se litigants may not do so. (*Trope, supra,* at pp. 278-293.)

Under *Trope* and its progeny, the exception may operate to bar a fee award to a nonattorney represented by an attorney who also acts on his or her own behalf as a party to the action. In *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 53-55 (*Gorman*), an attorney and his wife sued a general contractor, alleging construction defects in their home. The plaintiffs were represented by the attorney's law firm, in which he was the chief partner and officer. (*Ibid.*) After the action ended through a settlement, the plaintiffs secured a fee award under Civil Code section 1717. (*Gorman, supra,* at p. 53.) The appellate court held under *Trope* that the award was improper insofar as it reflected the attorney's own legal work, despite the plaintiffs' representation agreements with the attorney's law firm. (*Id.* at p. 95.) In so concluding, the court reasoned that because the attorney could not recover fees for his own work, the fee award to the wife was also incorrect, as she alleged the same damages as her husband, and their interests were "joint and indivisible." (*Ibid.*)

The exception for attorney self-representation is applicable to fee awards under the anti-SLAPP law. In *Witte v. Kaufman* (2006) 141 Cal.App.4th 1201, 1207-1211 (*Witte*), a law firm was named as a defendant in a malicious prosecution action, and was represented by three attorneys within the firm. After the attorneys prevailed on their motion to strike the complaint under the anti-SLAPP law, the trial court issued a fee award to the firm. (*Id.* at p. 1206.) Relying

8

on *Trope* and its progeny, the appellate court reversed the award, stating: "The attorneys of [the law firm] are the law firm's product. When they represent the law firm, they are representing their own interests. As such, they are comparable to a sole practitioner representing himself . . . ." (*Id*. at pp. 1207-1211.)

The exception is also applicable when an attorney employed by a firm represents both the firm and other attorneys within the firm. In *Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 376-388 (*Carpenter & Zuckerman*), a law firm and its two partners were named as defendants in an action for defamation and tortious interference with economic advantage. During the action, an associate attorney employed by the law firm represented the defendants. (*Id*. at p. 377.) After the associate succeeded in having the complaint dismissed under the anti-SLAPP law, the trial court rejected the defendants' fee requests. (*Ibid*.) In affirming the denial of the firm's fee request, the appellate court concluded under *Witte* that the associate's representation of the law firm amounted to self-representation by the firm. Pointing to *Gorman*, the appellate court also concluded the individual attorney defendants were not entitled to an award, as there was no showing that the complaint "subjected them to potential individual liability separate and apart . . . from their law firm." (*Id*. at p. 386.)

Generally, an order denying an attorney fee award is reviewed for an abuse of discretion. (*Carpenter & Zuckerman, supra,* 195 Cal.App.4th at p. 378.) However, to the extent the denial relies on factual findings, whether express or implied, we examine the findings for the existence of substantial evidence. (*Ibid*.; *Roddis v. All-Coverage Ins. Exchange* (1967) 250 Cal.App.2d 304, 309.) Under that standard of review, "[w]e look at the evidence in support of the trial court's finding, resolve all conflicts in favor of the respondent and indulge in all legitimate and reasonable inferences to uphold the finding." (*Carpenter & Zuckerman*,

9

*supra*, at p. 378, quoting *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1290.)

B.   *SML Defendants' Fee Request*

We begin with the SML defendants' fee request, which sought the fees they incurred through their representation by Apex, a law firm in which Jones and Tomaszewski are partners.  Cross-appellants argue that the trial court incorrectly determined that Apex and SML constituted a single law firm during the underlying action.  We disagree.  As explained below, under the circumstances present here, Jones's and Tomazewski's "of counsel" relationship is sufficient to support the trial court's ruling.

In *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1152-1156 (*SpeeDee Oil*), our Supreme Court held that for purposes of attorney-client conflicts of interest, an attorney publicly identified by a law firm as "of counsel" is presumed to have a "'close, personal, regular, and continuous relationship'" with the firm amounting to a "'single, de facto firm.'" (Quoting State Bar Standing Com. on Prof. Responsibility & Conduct, Formal Opn. No. 1993-129, pp. 5-6.)  Later, in *Sands & Associates v. Juknavorian* (2012) 209 Cal.App.4th 1269, 1272-1273 (*Sands & Associates*), the appellate court concluded that a law firm represented by an "of counsel" attorney may not recover contract-based attorney fees when the firm and attorney constitute a single, de facto firm.  There, two attorneys became "of counsel" to a firm before the firm was named as a defendant in a legal malpractice action.  (*Id*. at pp 1273-1274.)  During the action, one of the "of counsel" attorneys represented the firm.  (*Id*. at p. 1276.)  After the firm prevailed, the trial court awarded contract-based fees to the firm.  (*Id*. at p. 1278.)

10

Relying on *SpeeDee Oil*, the appellate court reversed the fee award. The court adopted as a "bright-line rule" the principle that "of counsel" attorneys to a law firm form a "'single, de facto firm'" when identified as "of counsel" on the firm's communications to the public. (*Sands & Associates*, *supra*, 209 Cal.App.4th at pp. 1294-1295, 1297.) Applying this rule, the court concluded that the firm could not recover its fees because it was self-represented. (*Id*. at pp. 1295-1299.) The court stated: "[T]he . . . firm communicated to the public that [the two attorneys] were 'of counsel' to the firm. Both attorneys were listed as 'of Counsel' on the firm's letterhead, and appeared in various attorney directories as 'counsel' or 'of counsel' to the firm. Thus, it does not matter that they may have represented clients obtained through their own efforts, that they had what they call a 'separate' practice, or that they were not on the firm's payroll." (*Id*. at p. 1295.)

Here, in ruling on the SML defendants' fee request, the trial court determined that SML and Apex were not separate firms, observing that the two firms had long worked closely together in the *Ronald* action, and that the underlying action was "just the next chapter of *Ronald*." The court remarked that the idea that SML and Apex were separate firms was akin to a lawyer from a multi-office firm saying, "[O]ur Dallas office really is a different law firm."

The record discloses ample evidence to support the trial court's finding. The trial judge had long been responsible for the *Ronald* action, and was familiar with SML's and Apex's conduct in that litigation; moreover, the court took judicial notice of a substantial portion of the proceedings in the *Ronald* action. In addition, in opposing the anti-SLAPP motion and SML's fee request, Stein and Davis submitted additional evidence bearing on Apex's "of counsel" relationship to SML.

This evidence showed that SML and Apex formed a single, de facto firm. Spivak, Jones, and Tomaszewski have repeatedly acknowledged (1) that in early

11

2011, Jones and Tomaszewski became "of counsel" to SML for purposes of litigating the *Ronald* action and other matters, and (2) that Apex thereby entered into an "of counsel" relationship with SML. Indeed, supporting SML's fee request was a declaration from Tomaszewski, who stated: "In or about February 2011, my partner Bridget Jones and I decided to affiliate with SML as 'of counsel' while continuing Apex as a separate law firm. In our capacity as 'of counsel' . . . , Ms. Jones and I are plaintiffs' counsel for plaintiffs in [*Ronald I*] and we work with SML on certain intellectual and transactional matters. [¶] . . . The 'of counsel' relationship between Apex and SML requires SML to compensate Apex on an hourly basis, other than in connection with our work for the [*Ronald* action]."

Furthermore, the evidence showed that the "of counsel" relationship was publicly disclosed in or after March 2011. In opposition to the anti-SLAPP motion, plaintiff Frank Martinez submitted a declaration stating that he had received in the mail an SML press release dated March 28, 2011. Attached to Martinez's declaration was a copy of the release, which described Apex's, Brookstone's, and SML's plans to file actions on behalf of homeowners. The release stated that Jones and Tomaszewski of Apex had joined SML as of counsel, and attributed the following remark to Spivak: "'In thirty years as a businessman and an attorney, I have zealously protected the rights of my partners, investors, employers and clients. . . . I see the same commitment to clients, transparency and integrity in . . . my new colleagues at SML, . . . Tomaszewski and . . . Jones.'"**[8]**

---

**8**  Although cross-appellants raised evidentiary objections to Martinez's declaration, they asserted no specific objection to the press release, and the trial court ultimately overruled all their objections. As cross-appellants have not challenged those rulings on appeal, they have forfeited any contention of error regarding the admission of the press release.

*(Fn. continued on next page.)*

12

We recognize that SML, in seeking a fee award, offered evidence that Apex's representation of the SML defendants fell outside Apex's "of counsel" relationship with SML. Spivak and Tomaszewski maintained in their declarations that the relationship did not include "defending SML or its lawyers in a lawsuit . . . ." However, on review for the existence of substantial evidence, we will not disturb the trial court's resolution of conflicts in the evidence when there is substantial evidence to support its findings. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 874.) In view of the link between the claims in the underlying action and the events in the *Ronald* action, the trial court reasonably determined that Jones's and Tomaszewki's "close, personal, continuous, and regular relationship" with SML during the *Ronald* action encompassed the underlying action as its next "chapter." (See *Sands & Associates*, *supra*, 209 Cal.App.4th at pp. 1294-1299.) Indeed, Jones, Tomaszewski, and Apex were alleged to be defendants within the complaint, even though they were not named as defendants on the caption page. Accordingly, there is substantial evidence to support the court's finding that Apex and SML formed a single law firm, for purposes of the underlying action.

The cases upon which cross-appellants rely are factually distinguishable. In *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1090-1093, our Supreme Court held that notwithstanding *Trope*, a corporation may secure a fee award for representation by its in-house counsel. In so concluding, the court reasoned that a corporation's agency relationship to in-house counsel is akin to that arising when a

---

Before the trial court, cross-appellants also suggested that the press release was merely a "draft" release that Spivak had discussed in connection with the March 2011 motion to remove Stein as co-lead counsel in *Ronald* action. However, the press release attached to Martinez's declaration is materially different from the draft release previously identified by Spivak.

13

corporation hires an outside private firm. (*Id*. at p. 1093.) Here, Apex is not reasonably viewed as "in-house counsel" to any of the SML defendants, as the record establishes that Jones, Tomaszewski, Apex, and the SML defendants have long functioned as a single law firm.

In *Gilbert v. Master Washer & Stamping Co.* (2001) 87 Cal.App.4th 212, 214, the plaintiff filed an action against an attorney personally for having acted on behalf of a client; no claim was asserted against the attorney's law firm. During the litigation, another lawyer in the law firm represented the defendant attorney. (*Id*. at pp. 214-216.) After the defendant attorney prevailed in the action, the trial court denied his request for a contract-based fee award. (*Id*. at p. 216.) The appellate court concluded that *Trope* did not bar a fee award to the defendant attorney because he had not represented himself.

Here, unlike *Gilbert*, the claims in the underlying action were directed at the SML firm itself, as well as individual attorneys within that firm. Moreover, the claims were predicated on conspiracy allegations that attached no separate or distinct liability to the individual attorneys; as we elaborate below (see pt. C, *post*), the complaint alleges that the defendants conspired to eliminate Stein from the *Ronald* action while misappropriating his name and image in advertising to recruit new clients. The situation before us thus falls under *Witte* and *Carpenter & Zuckerman* (see pt. B., *ante*), which establish that a fee award is improper when an attorney from a law firm defends both the firm and its attorneys against claims that subject the individual attorneys to no "potential individual liability separate and apart from . . . their law firm" (*Carpenter & Zuckerman*, *supra*, 195 Cal.App.4th at p. 386). In sum, the trial court properly denied the SML defendants' fee request.[9]

---

[9] For similar reasons, cross-appellants' reliance on *Cabral v. Martins* (2009) 177 Cal.App.4th 471, *Witte*, *supra*, 141 Cal.App.4th 1201, *Taheri Law Group v. Evans* *(Fn. continued on next page.)*

14

C. *Brookstone Defendants' Fee Request*

We turn to the Brookstone defendants' request, which sought the fees that Kutzner incurred through his representation by Brookstone. Cross-appellants contend the trial court erred in denying the request because Kutzner is a nonattorney. They are mistaken.

At the outset, we clarify the issue before us. Cross-appellants' brief suggests that aside from Kutzner's fees, the Brookstone defendants were entitled to the fees they incurred to SML, which purportedly acted as lead counsel regarding the anti-SLAPP motion, and the fees they incurred to Apex, which purportedly acted on SML's behalf. However, as cross-appellants' brief acknowledges, the request submitted to the trial court sought only Kuztner's fees arising from his representation by Brookstone.[10] We therefore limit our inquiry to the trial court's denial of that request.

---

(2008)160 Cal.App.4th 482, *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, and *Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260 is misplaced. The first three cases stand for the proposition that a defendant attorney who prevails on an anti-SLAPP motion may be awarded fees incurred through representation by another attorney or outside counsel. (*Cabral v. Martins*, *supra*, 177 Cal.App.4th at pp. 490-492 [fees properly awarded to defendant attorneys represented by "three separate law firms"]; *Witte*, *supra*, 141 Cal.App.4th at p. 1212 [defendant attorney properly awarded fees for services rendered by outside counsel]; *Taheri Law Group v. Evans*, *supra*, 160 Cal.App.4th at pp. 493-495 [self-representing attorneys may not recover their own fees].) As explained above, that proposition is not applicable here. The remaining cases also stand for an inapposite proposition, namely, that fees may be awarded to nonattorneys only when they are represented by counsel. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.*, *supra*, 163 Cal.App.4th at pp. 558-564 [insurers represented by private law firms are entitled to award]; *Rosenaur v. Scherer*, *supra*, 88 Cal.App.4th at pp. 281-287 [nonattorneys represented by law firm on pro bono basis entitled to award].)

[10]     The fee request jointly filed by cross-appellants stated: "Despite the fact that SML acted as lead and coordinating counsel for the Brookstone [d]efendants, no request is made for fees payable by [the] Brookstone [d]efendants to SML. Further, no request is made for the legal time of any SML partner or associate. Rather, the fees and 'additional
*(Fn. continued on next page.)*

15

As explained above (see pt. A., *ante*), the trial court may properly deny a fee request from a nonattorney represented by an attorney who also acted on his or her own behalf as a party to the action, provided that their interests in the litigation were materially identical. (*Gorman*, *supra*, 178 Cal.App.4th at pp. 53-55.) In the context of the anti-SLAPP law, an award may be denied absent a showing that the representation "related to the protection of . . . individual interests from realistic personal exposure." (*Carpenter & Zuckerman*, *supra*, 195 Cal.App.4th at p. 387.)

Here, the complaint subjected Kutzner to no potential liability distinct from Brookstone, Torchia, or the SML defendants. The complaint's claims relied entirely on an alleged conspiracy involving the SML and Brookstone defendants (including Kutzner), as well as Jones, Tomaszewski, and Apex. According to the complaint, in December 2010, the members of the conspiracy agreed on a plan to attract clients through a marketing program that misappropriated Stein's name and logo; furthermore, to facilitate the plan, they decided to "eliminate . . . Stein from the *Ronald* litigation." Regarding these allegations, Kutzner was identified as "a nonattorney who controls [Brookstone] from behind the scenes" and "[t]he leader of marketing." Attached to the complaint was a purported example of the misleading marketing program, namely, a mailer that invited interested parties to contact Brookstone. The trial court thus properly determined that under the complaint's allegations, Brookstone's and Kutzner's interests and potential liability were essentially identical.

In an apparent effort to distinguish Brookstone's and Kutzner's potential liability, cross-appellants direct our attention to declarations that Kutzner submitted in support of the anti-SLAPP and disqualification motions. According

expenses' pertain *only* to the defense services provided by . . . *Brookstone to Kutzner*." (Italics added.)

16

to the declarations, Kutzner owns several businesses, aside from serving as Brookstone's chief operations officer. In late 2010, Kutzner hired Stein to represent him in some unrelated litigation. During the same period, Kutzner worked with Stein to implement a business plan regarding mortgage industry consulting, and to establish a law firm called, "Hartford Dunn LLP"; Stein also hired Kutzner as a "public relations manager." In addition, Stein "instructed and authorized" Kutzner in his capacity as Brookstone's chief operations officer to use Stein's name and logo in connection with Brookstone's business. Pointing to this authorization, Kutzner's declarations maintained that Brookstone never misused Stein's name or logo.

Nothing in these declarations distinguishes Kutzner's and Brookstone's potential liability under the complaint. Although the declarations show that Kutzner had several business relationships with Stein, they do not suggest that those relationships constituted an independent basis for Kutzner's liability. Moreover, the declarations expressly deny that Kutzner and Brookstone misused Stein's name and image, as alleged in the complaint. Cross-appellants thus failed to show that Brookstone's representation of Kutzner "related to the protection of [Kutzner's] individual interests from realistic personal exposure." (*Carpenter & Zuckerman*, *supra*, 195 Cal.App.4th at p. 387.) Accordingly, the trial court properly denied the Brookstone defendants' fee request.

D. *Fees Incurred on Appeal*

Cross-appellants request an award of attorney fees incurred on appeal. In support of this request, they have submitted declarations from Maloney and Torchia stating that SML and Brookstone, acting on behalf of themselves and the other cross-appellants, prepared a respondents' brief -- which was never filed due to the appellants' failure to submit an adequate opening brief -- and also prepared

17

cross-appellants' opening brief. We conclude that respondents have shown no entitlement to a fee award on appeal.

Generally, an award under the anti-SLAPP law encompasses expenses incurred in litigating an award after the trial court has granted an anti-SLAPP motion (*Ketchum v. Moses*, *supra,* 24 Cal.4th at p. 1141), including fees incurred on appeal to successfully defend the grant of the motion (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499-1500), or to successfully challenge the denial of a fee award (*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15, 21). The fees awarded may be adjusted to reflect partial or limited success on appeal. (See *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 341-347.) The function of this reduction is to adjust awards to promote the goals of the anti-SLAPP law and minimize abuses. (*Id*. at p. 347.) Thus, a party that achieves "insignificant" success lacking "any practical benefit" may properly be determined not to have prevailed, for purposes of a fee award. (*Id*. at p. 340.) Although appellate courts ordinarily remand requests for fees on appeal to the trial court, an appellate court may determine the award on a suitable record. (*Id*. at p. 346.)

Here, the record establishes cross-appellants took no action to secure the dismissal of the appeal, as they never opposed the filing of the appellants' opening brief, which the clerk's office repeatedly and promptly rejected as defective. Although cross-appellants acknowledge that they did not file a respondents' brief, Maloney states that much of SML's work on the respondents' brief also related to cross-appellants' brief; in addition, Torchia states that some of Brookstone's work related to cross-appellants' brief. However, cross-appellants did not prevail with respect to the sole issue raised in the cross-appellants' brief, namely, the denial of their fee requests. Because the dismissal of the appeal was based on grounds

18

unrelated to the anti-SLAPP law and cross-appellants otherwise achieved no success on appeal, we deny their request for an award of fees incurred on appeal.

## DISPOSITION

The orders of the trial court are affirmed.  Cross-appellants are awarded their costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

19